Case number 23-7042. Anthony D. Givens et al. Appellants versus Muriel Bowser in her official capacity as Mayor Washington, D.C. et al. Mr. Bellen for the appellants. Mr. Bowe for the appellants. Proceed, Your Honors. Good morning, Your Honors. My name is Eitan Bellen and I'm the attorney for the appellants, Muriel Anthony Givens, Deborah Bowser, and Eugene P. Givens. Your Honors, I'm going to deal with the mootness issue. The district court erred when it found that the appellants of PME claims were moot as a result of the defendant's admitted violations of the PME rules. Ms. Givens, Eva Mae Givens, of whom the appellants are the successors, was forced to pay thousands of dollars to her nursing home care that the defendant later admitted she was not required to pay. Those monies have never been paid back to Ms. Givens. Or to her successors. And therefore, there are still unremitied damages that she and the appellants have suffered. The fact that the defendants belatedly paid the nursing home monies after the appellants had already paid the monies does not change that result. Again, the appellants still suffer the damages as a result of those PME violations. Now moving on to the fair hearing timeliness claims, Your Honor. These claims satisfy the inherently transitory exception for mootness. First of all, no one contests that they satisfy the first prong for the mootness test. That the claims are inherently transitory and a district judge would not have time to rule on an issue of class certification before the case would become moot. Nobody contests that, and that's what the lower court found. It's really on the second part of the test, whether the class members retain a live claim at every stage of the litigation. Now, the first amended complaint and the proposed second amended complaint say that these violations happen repeatedly. The first amended complaint says more than 40 times. The second amended, proposed second amended complaint says it happened many, more times. And under this court... That complaint's not before us. It is not before you except for the upon the consideration of whether the district judge... If we ever get to that, then you'd have a second amendment complaint, but for now it's not here. Okay, well... What's the basis for the 40 number? Your Honor, I will admit out front, it was just, it was an allegation. There was no way to... What do you mean by allegation? There was no way, there was no way to prove or disprove... How did you come up with 40? It was a number we just alleged, Your Honor, upon information and belief. What information? Well, we believe, from our discussions with people, we believe that this has happened many times to Medicaid, to Medicaid recipients or applicants in the District of Columbia. But no, there is no specific fact that the appellants learned that where they had actual numbers... How many people were you discussing this with? A number of practitioners. A number of practitioners? Yes. How many? And how many they said they knew about? Your Honor, it was sort of a general discussion. There was no, in other words... So there's nothing concrete at all about the 40? There's nothing concrete at all about the 40. And the reason for that... Some volume is necessary for your allegation that this is going to have enough volume that there'll always be a plaintiff who has a live claim. I understand, Your Honor, but under this court's precedence, when the information is peculiarly within the possession of the defendants, which is the case here, you're allowed to allege it on information and belief. You still can't just make up it. Well, in this sort of circumstance, Your Honor, I believe that because federal law prohibits disclosure of any Medicaid information about Medicaid people, this is a special case where we have a federal law and federal regulation... I can't see the names. I assume there's like a DC FOIA law you could put in and say, how many? Tell us how many records on how many were delayed. I understand, Your Honor. Then I'll move on. You could get more information. Possibly. It's possible. And when the proposed amended complaint went up to hundreds and hundreds, was that based on more discussion? It was not. It was not based on more discussion. But you decided to multiply it? Not as simple as that, but anyway, I... What did happen? If it wasn't as simple as that, how did you go to hundreds and hundreds? No, Your Honor, it's basically as simple as that. I'm sorry. But I'll move on from that. I'll move on from that, which is why we filed the proposed second amended complaint. In terms of the claim with the PIMI claims, we actually have statistics from the defendants themselves that show that they have not been able to render decisions in hearings, which include Medicaid fair hearings, within 120 days. What percent Medicaid fair hearings are of that group of hearings your statistic was about? We cannot tell you that, Your Honor. Well, the percentage was, in some of the years, was up to 75% of the cases they didn't do with 120 days. I don't know what percentage of the Medicaid fair hearings were. What I'm asking you is, you had a group of hearings where they weren't doing hearings in 120 days. Within that big group, we don't know what percentage were Medicaid ones? No, we don't. There was no information like that available, Your Honor. I believe that it renders plausible, though. The question is whether the allegations render plausible the claim that they did not make Medicaid fair hearing decisions within 90 days. Let me make sure I understand what you're just colloquy here. If it's 40 or whatever number, you don't know what percentage that is? You don't know the denominator? Is that correct? Of specifically Medicaid fair hearings, no, Your Honor. But of OAH hearings, which include fair hearings, yes. And that satisfies at least the minimum- What percentage is that? I'm sorry? And what percentage is that? Oh, some of them were up to 50, 40, 50%. In fact, the- I'm getting this. You're saying of a subset of certain type of hearings, the percentage deferred, delayed, is what? It's varied over the years. Could be it's up to 70%, could be 50%. All the details are listed in the brief, Your Honor. We cited the very statistics from OAH. So what we basically have here- 50% of the time that happens. What basis is there for thinking it's a policy practice? Well, Your Honor, I think- It's slipping up. I don't think 50% is slipping up. I think if you look at the case law, Your Honor, something like 50, 60, 70% is more than enough to say that there is a policy. What if it's just that they're backlocked? They're not allowed to be, Your Honor. The case law specifically says that they must follow the timeline. Yeah, that's right. So they can't be. 50% is not acceptable. 20% is not acceptable. They can't be in these- All right, but just to say some percentage don't get heard on time, and therefore it's a policy or practice, won't wash, right? I think it will wash, Your Honor. Whatever the percentage. Not whatever the percentage, but if you look at the percentages in these cases, they were trying to get to- We don't know those percentages are talking about Medicaid hearings. We do- Some sub-percentage of that percentage. I think it's a fair inference. Again, Your Honor, we do not- How is it a fair inference if we don't have any sense of what the percentile of all these OAH hearings are attributable to Medicaid claims? Because we don't have the burden of proof here, Your Honor. All we have to do is show that it's a plausible claim. I'm going to try again. To know it's plausible, we have to have some- Plausible just doesn't mean I said something that isn't necessarily foreclosed by facts. What it means is there has to be some basis. And so if you were to look across the federal government and say, here's every ALJ hearing that they do, and X percentage of that, 60% of them are not on time. Therefore, it's plausible to believe that Nuclear Regulatory Commission ALJ decisions are not on time at a material percentage. You couldn't do that because there's just so many different subject matters covered. And so the same thing here, and maybe I don't know enough about the district, I don't know how many different categories of OAH subject matters go into these OAH hearings. And without knowing that, which should be something you could find out, without knowing what percentage of those hearings, or even how many different subject matters they cover, then I don't know how we get to plausibility. Your Honor, it doesn't have to be plausibility, as you know. It doesn't have to be more likely than not. It doesn't have to be- I'm sorry. It doesn't have to be- I'm saying more likely. No, I know. I'm saying plausible. Your Honor, I understand your position. Our position is- I don't have a position. I have a question. Okay, so my answer is that I believe that it is plausible when you have these high percentages of failures among their hearings. It's reasonable to presume that the subset is also violent. If Medicaid hearings were 5% of that total, would it still be plausible? Sure. I mean, as the Supreme Court said in Rawlinson in 1977, where they made a determination saying that certain issues that were shown nationwide about people's health, they decided that that could be said about the people of Alabama as well. And the court felt that that was a reasonable thing. I think it was on summary judgment even. A reasonable inference there. And here, we're not on summary judgment. And here, we couldn't get the discovery. And I think that this does pass the plausibility test, because given the terrible statistics that they have, it renders it plausible. Does it render more likely than not? No, not necessarily. No one's saying you have to do that. I understand, Your Honor. So what theory of municipal liability are you pursuing? That wasn't clear to me. The theory of municipal liability is that they had these reports, they've known about these things, and the heads of the agencies haven't done anything. In fact, in their own reports, they say we're trying to get to 50%. They haven't resolved this. Even their goals are below what would be permissible. Their Medicaid offices? I'm sorry, Your Honor? Whose report? It was the report of OAH, the Office of Administrative Hearings. And they said themselves that year after year, we're trying to get to 50%. We're trying to get to 50% of the time. So I'm sorry, so we've got sort of four theories of municipal liability. So there's adopted a policy, you're not alleging they've formally adopted a policy of delay. The decision was taken by a policymaker, you're not alleging that. No. That there's actions are so consistent over time, that supervising policymakers must have known. That's the one, Your Honor. Or should have known of a risk of violations of law, but showed deliberate indifference. You're on number three? Number three. Yes, Your Honor. Because of the, because they themselves... Were you clear in your First Amendment complaint to identify that it's that third theory of municipal liability? I don't identify that legal theory, but... Well, the press, as I understand it, the press says you have to allege facts that can be interpreted as a theory. But the Supreme Court has ruled that you don't have to have a particular legal theory in one of the cases I cited from 2014, Your Honor. You have to have the facts that if accepted, or it's plausible, would render it... I think this is blue. If the plaintiff fails to identify the type of municipal policy at issue, court would be unable to determine, as required by Iqbal's second step, whether the plaintiff had provided plausible support for her claim. Although the court could try to surmise which theory of municipal liability has the strongest support in the complaint, this is not our role. It therefore follows that to state a valid claim against a municipality under Section 1983, a plaintiff must plead the elements of the relevant type of municipal. I think the issue is, Your Honor, when it gets to the second... I see that my time has run out. Did you do that? Yeah, I did. We did it, certainly, I believe, in the proposed second amended complaint, where we cite those statistics. The proposed second amended complaint, which we only get to... The Supreme Court now doesn't have that. I would say that that's correct, Your Honor. But the second proposed second amended complaint, and the district court abuses discretion by not allowing us... May I continue? I see my time is up. The district court abuses discretion by not allowing us to follow the motion to amend the second complaint. Well, let's just talk about, first of all, whether it was proper to dismiss the first one as moot. Even if... I don't... I'm sorry. I think, given the inherently transitory exception to the bonus doctrine, and the statistics that show that OAH has consistently failed to render hearing decisions within 120 days, that that's enough at this pre-discovery stage of the case to allege that there will be continuing to be violations, class members who are suffering violations of the fair hearing timeliness, fair hearing timeliness matters. You don't dispute that Ms. Givens' individual claim for injunctive relief is moot? No, that is mooted this time, Your Honor. But her claim... For damages. Yeah, and the damage claim is under the PME side of this, not the fair hearing side. Right, right. And then, so her injunctive claim is moot. And then, as I read your proposed first amendment complaint, you want to substitute in her children as the class representatives? We made a motion to substitute class representatives, which was grant... And it was the children as the class representatives. Well, we haven't made a class certification motion yet, but that's what we anticipate, Your Honor, that the children will be class representatives. Have they ever been denied a hearing? No, but they're the successors in interest, and under DC... I know, but you just said her injunctive claim is moot, so I'm trying to figure out who could be a class representative for the injunctive claim. Well, successors to... Successors to a moot claim do not have a claim. If it satisfies one of the inherently... If it satisfies one of the exceptions to mootness, I believe they do, Your Honor. Okay. So we believe that it does satisfy the exception to mootness. I agree, it's a moot claim. A person doesn't have their own claim if it's moot, but these people are allowed to assert under DC law, which is what you look to, to see what sort of... They've never had a claim. They are allowed to adopt it as successors, as the case law says. DC specifically allows successors to do Section 1983 claims. There's case law that says that, and so... Case law that says successors who themselves have never experienced the injury for which injunctive relief is sought can nonetheless be class representatives on an... I'm only talking about the hearing claim, the injunctive claim at this point, can be adequate class representatives, even though the claim to which they succeeded is moot, and they have never experienced the injury. Well, we haven't made a class certification motion yet, Your Honor, so I think that would be a bit premature. What we're asking for is to be able to file a proposed second amended complaint. So I actually, I have not researched that, but I do believe that they can bring it, just like you can have a headless class, bring... When there's no one who has any more injunctive claim. There are many situations where that happens. A person who succeeds the interest of another party hasn't suffered damages either, and they can also bring a claim if the executor was not related to them. Injunctive relief is maybe different, maybe not, maybe... I'm not aware, I would just say, Your Honor, I'm not aware of any cases that make that distinction, and I don't really see a principled basis for making a distinction between an executor bringing a damage claim that they were never damaged for, qua individual, against an individual, an executor bringing an injunctive claim for which they never suffered any relief. I mean, under that theory, no executor could bring any claim unless there were somehow beneficiaries of the... They're getting money into the estate, but they can't get an injunctive. But an executor doesn't benefit from that money, Your Honor. No, but it's their responsibility to get the money into the estate, legal responsibility. Anyhow, are there any more questions from my colleagues? I have one question on the dismissal with prejudice or without prejudice. I think dismissals for lack of jurisdiction are generally without prejudice, but I think both seem to think that this was a dismissal with prejudice. Is that right? Well, that's because besides the issue of mootness, the court also went on to decide that there was no pattern, that we hadn't sufficiently alleged a pattern. And so the judge, Judge Sullivan, actually ruled on, even though I agree with Your Honor that he didn't have to once he found it moot, he went on to rule that as a substantive matter, the complaint didn't state a claim. Was it possible that the claims that, if some claims were correctly dismissed for mootness, then they should have been dismissed without prejudice. And then if some claims were not moot, but were correctly dismissed under 12B6, the presumption would be they were dismissed with prejudice. I agree, Your Honor. The court below did not say it did not dismiss it with prejudice when we argued, when we made our motion for re-argument. I guess if we find that some of the claims are moot, would it be useful to remand the district court to ask if the district court intended to dismiss those claims with or without prejudice? My client certainly would have no objection to that, Your Honor. Do you think we've forfeited the argument that there's a general rule that mootness dismissals are generally without prejudice? I don't think we forfeited it, Your Honor, because the judge, again, made substantive rulings. We had to assume it was with prejudice. The mootness may have been without prejudice, but then the judge went on and made substantive rulings saying that as a substantive matter under 12B6, it was with prejudice. Now, whether if he had specifically said it was with prejudice vis-a-vis the mootness argument, that's another thing. But the judge never said that. But he did say he did make a decision based on- He said everything was moot. He did. In the alternative. Yeah, he did. That's what you're supposed to do if you don't have a jurisdiction. You're not supposed to go on and talk about the merits. I agree with you, Your Honor, but that's exactly what the judge did. I understand. And so we have to assume that the judge was making alternative claims and that he dismissed this with prejudice based on those claims. We thought he was wrong on the issue of mootness. But then he went on to do the other, the substantive decision. So it was a dismissal with prejudice on that. And so we believe that the court erred in doing so because there was a way that our client had a proposed second amended complaint that was put before the court. At the same time, they filed a motion for substitution. The magistrate judge granted the motion for substitution for the purposes of filing objections to the magistrate judge's order, but did not grant, but it held it in abeyance regarding our motion to amend. The district judge, we appealed, we objected to the district judge. District judge said, you lose. And when we went and made a motion for re-argument based on 59E saying there was a motion to amend, he said, you can't do that because you never appealed the holding in abeyance by the magistrate judge. I think we have all that.  Thank you. We'll give you a couple minutes for rebuttal, though. Thank you, Your Honor. Your vote? Vote? Vote? Morning, Your Honors. May it please the court. Russell Bogue for the District of Columbia. I'd like to start with what I take my friend to have conceded already this morning. The first is that there's really only two claims before this court. The first is the individual claim for damages or misgivings, the error in calculating your patient payability. And the second are the Class B fair hearing claims. Now, on those, I take them to have conceded that there's essentially no basis for the number 40 in their First Amendment complaint, which, as Your Honor noted, is the only complaint in front of this court. I also take them to have conceded that they have no theory for a no liability. Now, we think both of those are fatal for independent reasons. The simplest way to resolve this case is a mootness issue. It is my friend's burden to prove that there is an exception to mootness. We take them to have conceded that without the inherently transitory exception, their claims are moot. So they need to assure you that this exception applies. And we think they haven't come close to meeting that burden. They have to show, as they've mentioned, that there's a constant class of persons that are suffering fair hearing delays. The only factual allegation is that 40 such persons have suffered delays over the past three years. Now, that is a drop in the bucket in terms of how many hearings come before these judges. There is some discussion about statistics. This is not in the record, but there are several hundred Medicaid fair hearings every year. In terms of timeliness, if Your Honors are concerned that there is some ongoing timeliness issue, again, this isn't in the record. But just to give you some background to this, the Office of Administrative Hearings for the District of Columbia goes in front of the Council for Performance Oversight every year, and they answer questions about, you know, how timely they are, what their statistics are for the year. And just for fiscal year 21, the average to get a hearing in front of Medicaid Appeals Board was 50 days, and the number of days to reach final case resolution was 87 days. Now, that's well within the 90-day regulations. Obviously, in this case, there was an unfortunate delay in misgivings receiving a fair hearing. And obviously, there was an unfortunate— None of that is in our record, though. It's not in your record. I recognize that. Is it a public testimony? It's a public. You can look this up, and we're happy to provide briefing on this. I will say, we don't think this should turn on statistics. I mentioned this just to assure you in case you're worried that there is some ongoing delay that we're trying to dodge. That's not the case. The reason why— Can I ask a little different question? Sure. No one's accusing you of dodging anything. Sure. They had this statistic about delays generally in Office of Administrative Hearings. Correct. Is there publicly available information that one tells them what percentage of OAH hearings are Medicaid hearings? Is that something find-outable? Sorry, I made that word up. Is that something that can be determined? And two, are there separate statistics anywhere as to timeliness just as to Medicaid hearings? Apart—you just mentioned this testimony. Are these things that can be found by people? As to the first question, I'm not sure. It could probably be backed into by looking at what the other hearings are, the statistics for the other hearings. So in this report that I just mentioned, I apologize that it's not in the record, they go through statistics for various types of hearing—supplemental nutrition assistance hearings, et cetera. But it's not all entirely within the control of the government, this information? It's not all entirely in the control of the government. And we'll just point out that these statistics aren't in their first amended complaint. So in our view, the only factual allegation you have here is that this happened 40 times over three years. So we think that's just not enough to carry their burden on that. On the misgivings damages claim, she says, district made a mistake, district mishandled my case, violated the law in doing so, and I've suffered out-of-pocket damages. I'm out $20,000-ish, period. Why is that claim moot? I'm not talking about whether she'll be able to recover or anything on the merits, I'm just asking about why that claim would be moot. She, slash her estate, are out-of-pocket $20,000. She may have a pocketbook injury, Your Honor, but mootness is also determined by whether or not there's any relief that this court—whether or not she's been provided the relief that she properly sought. Our argument is that— No, no. The relief she properly sought was recovery of out-of-pocket damages. It's the district that has tried to turn that into, oh, you wanted us to pay the facility where you were living and then pay the facility. But her claim is, if I read the complaint as, thank you very much, you fixed your problem going forward, but I had to pay that $20,000-ish out of my pocketbook, and I am still out that money. Pocketbook injury like that is a traditional type of injury. It's a live injury. It has not yet been reversed. Someone else has the money, but that injury has not been redressed for her or for her estate. I'm having trouble understanding how that claim is moot. Sure. I'll get at this by trying to explain how we think this normally goes, and let me know if this is not responsive to your question. Our understanding of how these claims typically work is that money goes from, in this case, DHCF, the state agency, to the providers. That's how, when these errors are made and there's a claim that you haven't paid the provider enough, it goes from the district to the agency. There are two reasons for that. The first is that that's how the Medicaid statute and implementing regulations say it's supposed to go, that payments go from the state to the provider. The second is a practical reason, which is that providers bill the district, and we have existing relationships with providers. They're reimbursable. I understand all that. Eventually, the district paid the nursing facility. How did that redress her out-of-pocket costs? Because we drew her claim as, you made an error in paying the nursing facility. One way of her saying, I'm paying too much is you're paying too little. My injury is, thank you for giving someone else the money. That does not redress my $20,000 out-of-pocket loss. That's what she's alleging. If they say that's what she's alleging, that would not be moved. Well, we think what she's saying there is the nursing homes haven't paid me back yet. Now, we don't understand why that would be the case. I don't know why you get to say what she's thinking. Her complaint says, and you don't get to psychoanalyze it, or say, here's what we would like it to look like. Here's traditional things. And normally, that traditionally works because people don't die before they get the benefit of that money credited against future stays. But if she says in her complaint, I'm out-of-pocket this money, and today, I am still out-of-pocket this money, it's not moved. Your arguments about traditional payment forms and stuff may go to the merits, but I don't understand how it makes it moot. Are you making a mootness argument or a standing redressability alone argument? We're making a mootness argument. We understand that— How is that moot? Because our understanding of what makes it moot is that if the relief—we understand that she's saying we're responsible for that money. Our response is we're not responsible. So asking us for that relief doesn't keep your claim live. We understand that she feels— Asking the district for relief from out-of-pocket costs doesn't keep a claim live? I think that's exactly how these things work. Well, our understanding is how it works is you ask the district to correct the mistake that you allege, which is that we didn't pay the provider enough money. The mistake that she alleges was clearly fix it going forward. And two, I'm out-of-pocket. Right. She's still out-of-pocket. Right. And our response to that is we believe that she's out-of-pocket because the nursing homes haven't upheld their end of the bargain. Not that we have— That may be your belief and that may be a merits argument. But she says, wrong. I'm still out of—you did it to me and I still have been redirected. You hurt me, district, not the nursing home. And you have not remedied my pocketbook injury. That is not—do you have a case that says that is a moot claim? We would point to Conservation Force, Your Honor, where they said that when you received the relief, you saw it. Now, I understand— If that's not—so this all just turns on how we read the complaint. If we read the complaint as the relief she sought was fix my pocketbook injury, you would agree there's no moot. I think what we'd add to that is if that's not relief properly sought for the district, if that's not the type of relief that the district provides in these circumstances— That's a failure to state a claim to me. That doesn't sound jurisdictional. Sorry, say that again. If you say that's not something you can get under the law, that sounds like failure to state a claim, not mootness, which is jurisdictional. Well, we read Conservation Force to say that if you've been provided the relief that you sought, and we understand that she's saying she's seeking reimbursement— That case doesn't help you if that's not what she sought. Right. Her original allegation was you made a mistake in calculating my PME deduction. And so our response is we've now fixed that and we've made back payments. It's not just going forward. We've made back payments, and that's standard operating procedure. And there's a reason for that, which is that we have pre-existing relationships with these providers. We do not provide reimbursement, in fact. But if the complaint says award misgivings, monetary damages, then that's what she's asking. Right. I guess our response is we never provide those, and so we read that to be a moot claim because by shoehorning in her— You never provide those, so you think it's not— Viable claimant law. We never provide reimbursement is what I'm saying. And so what— You may not under the Medicaid program, but I assume you have a judgment fund of some sort, at which point you can pay damages. Correct. That's right. Of course, we can always pay damages. So if she thinks awarding misgivings—and she has the class in there, too—but monetary damages in an amount to be termed a trial, that's what the complaint says. Right, Your Honor. And we think that's a claim against the nursing— And say pay my nursing home. I understand that, Your Honor. Yeah. Do you have a view—oh, sorry, you guys go ahead. No, no, I was going to ask. I'm just— Prejudice. Prejudice, but you want to ask? No, I was going to that. If we hold that some of the claims were properly dismissed for mootness, do you think that we should read the district court to have dismissed them without prejudice? You know, this argument wasn't pressed by Apollon, so if you believe that some claims were dismissed for mootness and you'd like to remand to the district court to clarify that dismissal, that's fine by us. Obviously, if they're moot, they'd have to find another person. Then maybe the best approach for that, a more aggressive approach, would be we just say, as a general matter, since claims for lack of jurisdiction are generally dismissed without prejudice, that we read the district court to have dismissed the moot claims without prejudice. Would you object to that? No, I wouldn't. Are there no further questions? Thank you very much. Good, I see you're affirmed. Thank you. Mr. Bellin, we'll give you two minutes. Thank you. I just wanted to address the last question asked by Judge Walker. It's fairly—I think it's clear that the district court improperly dismissed on mootness with prejudice because it did not allow us— I think he just gave you what you want. Okay, you know what? Then I will stand on my briefs. I have nothing else to add. Let me ask a question along the lines of what Judge Millett and your opposing counsel were discussing on the complaint. Does the complaint allege that your client paid the nursing home? Yes, it does. I think that's probably the best inference of what it says because it says she was required to pay it, and if she hadn't been required to pay it, she would have been able to pay off a pre-existing debt. I'm not sure it expressly says that she did pay it. Did she pay it? She did pay it, Your Honor, and I think if you read it, the complaint in the light most favorable to my client, that's what it says. There are no other questions? No, I have no more questions. Oh, you do? Okay, please. So, do you agree that the Givens children were only parties for the limited purposes of objecting to the R&R? I understand that the magistrate judge granted the motion for substitution only for the purposes of the objections to the R&R, but he said he was going to only rule on the rest of the motion for substitution if and when the district judge made his determination on the case. So, we moved to be included for all purposes. It was the magistrate judge who decided on his own to move it for limited purposes, which we say, by the way, even though we didn't agree with it, it certainly was within his Oh, you didn't appeal that holding in abeyance, and therefore I'm going to dismiss the entire complaint with prejudice and not hear your motion to amend. That was where the violation was. It was perfectly for the district judge to say, well, I'm dismissing it with prejudice because you didn't file an objection to the massively discretionary decision of the magistrate judge to not decide part of a motion and to say that we should have filed a frivolous objection, which under the case law it would have been, is certainly not a sufficient basis to say that a case should be dismissed with prejudice. We think that that's an abusive discretion, Your Honor. Thank you. Thank you very much. Thank you very much, Your Honor. The case is submitted.
judges: Millett, Walker, Ginsburg